OPINION
Defendant-appellant, Pinnacle Properties, Inc. ("Pinnacle"), appeals a decision of the Warren County Court of Common Pleas. The court held that plaintiffs-appellees, Steve and Judith Gould, breached their contract with Pinnacle. We affirm.
Appellees contracted with Pinnacle for the construction of a house in Loveland, Ohio. The contract was signed by appellees on March 19, 1995. The contract stated that appellees agree "to purchase said house and lot and to pay [Pinnacle]" $192,780. The contract also stated that construction would be completed one hundred twenty days from the date of the contract. Appellees paid Pinnacle a deposit of $19,278. On July 21, 1995, appellees added $6,926.87 to the purchase price by requesting extra options for the house.
An agreement was signed between Pinnacle and appellees on August 7, 1995, which stated that "if [the] house [is] not complete[d] by this date [August 24, 1995, Pinnacle] to pay buyer $80.00 a day beginning August 25, 1995." Construction of the house was not completed on August 25, 1995, and Pinnacle delayed closing until September 25, 1995. Because of the delay, appellees bought a different house on September 10, 1995. Pinnacle thereafter sold the house to a different purchaser on January 2, 1996 for $175,000.
On November 30, 1995, appellees filed a complaint against Pinnacle requesting a cancellation of the contract and a refund of their deposit. Pinnacle filed a counterclaim against appellees December 22, 1995, claiming that they willfully, intentionally, and without any justification breached their contract, and acted in tortious bad faith. Pinnacle requested compensatory damages, attorney fees, and punitive damages of $399,413.74.
On August 26, 1997, the trial court held that Pinnacle did not breach their contract with appellees by failing to complete the construction of the home in a timely fashion. The court also held that appellees did not have the right to rescind the contract because Pinnacle's actions were not so unreasonable as to amount to breach of contract. The court further found that appellees' failure to pay the purchase price was a breach of the contract with Pinnacle.
The court held that appellees owed Pinnacle damages of $4,706.87 because of their breach of contract. The court also found that appellees were entitled to $2,400 pursuant to the $80 per day penalty for Pinnacle's failure to complete the house by August 24, 1995. The court further found that appellees were entitled to a refund from Pinnacle of their down payment of $19,278. The combination of the above decisions by the trial court resulted in a judgment of $16,971.13 against Pinnacle. Pinnacle appeals this decision and presents two assignments of error.
Assignment of Error No. 1:
 The trial court erred to the prejudice of the Defendant-Appellant in calculating the market value of the property based on the opinion of the Plaintiff's inexperienced expert and penalizing the Defendant when the Plaintiff clearly and admittedly breached the contract.
Pinnacle argues that the trial court improperly calculated the fair market value of the property in its determination of damages. Pinnacle claims that the court erred in relying upon the opinion of real estate agent Harry Spurling, and described him as a "haberdasher turned realtor." We disagree.
Generally, under Ohio law, when a purchaser defaults upon a contract for the sale of real estate, the seller may recover the difference between the contract price and the market value of the property at the time of the breach. Roesch v. Bray (1988),46 Ohio App.3d 49, 50. "Money damages awarded for breach of contract are designed to place the aggrieved party in the same position they would have been in if the contract had not been breached." Abbruzzese v. Miller (Sept. 26, 1996), Franklin App. No. 96APE03-265, unreported, at 9, following Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436.
The primary dispute between the parties in the present case is the market value of the property at the time of the breach. "The determination of the amount of damages is within the discretion of the trial court, and will be sustained if it is supported by sufficient credible evidence and is not against the manifest weight of the evidence." Hamilton v. Abcon Construction (Nov. 24, 1997), Warren App. No. CA97-03-027, unreported, at 5.
A review of the trial transcript reveals two different estimates of the market value of the property at the time of the breach. Thomas Canning, testifying on behalf of Pinnacle, stated that the market value of the property was $175,000 based upon the amount the property was sold for on January 2, 1996. Harry Spurling, testifying on behalf of appellees, stated that the market value of the property was $195,200 based upon the surrounding neighborhood area, the size of the lot, and the home itself.
Pinnacle contends that the trial court should have relied upon Canning's opinion that the market value of the property was $175,000 based upon the amount for which the property was sold. It is true that real estate sold at the highest price obtainable within a reasonable time after the breach of contract is evidence of the market value of the real estate on the date of the breach. Roesch, 46 Ohio App.3d at 50. However, it is a question for the trier of fact to determine whether the price for which the property was sold was the "highest price obtainable." Even if the trier of fact determines that the price for which the property was sold was the highest price obtainable, that amount is only "evidence of the market value on the date of the breach" and is not the sole determinating factor.
A review of the trial court's judgment entry reveals that the trial court chose to adopt Spurling's estimate over Canning's estimate. The trial court stated in its opinion:
 Tom Canning, a real estate agent and business associate of [Pinnacle's] chief share holder, opined that the market value was $175,000.00 because this residence was considered a "used house" and therefore must be discounted ten to fifteen percent in value. We consider this opinion questionable.
Essentially, the determination of damages in the present case by the court was an assessment of credibility by the court between Canning and Spurling:
 Our role in assessing credibility is very limited because we do not have the same opportunity that the trier of fact has in being able to see the witnesses testify and their demeanor while they testified. Instead, we have only the printed words of the record.
State v. Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035, unreported, at 12-13, discretionary appeal not allowed (1998), ___ Ohio St.3d ___.
Pinnacle is correct in pointing out that Spurling had been employed as a real estate agent for six years while Canning had been employed as a real estate agent for over twenty-six years. However, the trial court questioned Canning's explanation of why he thought the property's market value was $24,706.87 less than the amount Pinnacle contracted to sell the property to appellees. After having reviewed the record, we find that the trial court did not err in the calculation of damages because the trial court's reliance upon Spurling's estimate is supported by sufficient credible evidence and is not against the manifest weight of the evidence. Pinnacle's first assignment of error is overruled.
Assignment of Error No. 2:
 The trial court erred to the prejudice of Defendant by denying its Motion to Take Matters As Admitted.
Pinnacle filed a "Motion to Take Matters as Admitted" with the trial court on October 11, 1996. Pinnacle argued that many of appellees' responses were improper because they stated:
 Cannot admit or deny. After a reasonable inquiry, the information known or obtainable by [appellees] is insufficient to admit or deny the allegation. Civ.R. 36(A).
Pinnacle requested the trial court to deem appellees' responses "insufficient as a matter of law, and that they be taken as admitted" pursuant to Civ.R. 36. On December 2, 1996, the trial court overruled Pinnacle's motion. Pinnacle argues in its assignment of error that the trial court erred in overruling the motion.
Civ.R. 36(A) states in part:
 If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.
A trial court's decision on a motion filed pursuant to Civ.R. 36 will be reversed only if the reviewing court finds that the trial court abused its discretion. Tabor v. Westfield Cos. (Feb. 27, 1998), Gallia App. No. 97CA05, unreported, at 5, following Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66.
A review of the contested requests for admissions reveals that each request involved questions related to the issue of whether appellees breached their contract with Pinnacle.[1] The trial court found that appellees breached their contract with Pinnacle. Furthermore, Pinnacle emphasizes in its brief that "[t]he breach of contract is not at issue."
Even if we were to find that the trial court erred in overruling Pinnacle's motion and hold that appellees admitted to each admission, Pinnacle cannot show prejudice because the admissions only provide evidence tending to show that appellees breached their contract. Breach of contract is an undisputed issue in this appeal. Therefore, we find that Pinnacle has failed to show how it was prejudiced by the trial court's decision to overrule Pinnacle's "Motion to Take Matters as Admitted." Pinnacle's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Pinnacle objected to appellees' response to the following admission requests:
 4. During May 1995, [Pinnacle] constructed storm sewers on and about the Property.
 19. The kitchen cabinets specified by [appellees] were not readily available in July 1995.
 20. The kitchen cabinets specified by [appellees] could not be delivered by manufacturer until September 1995.
 21. As soon as [Pinnacle] learned of such facts late in July 1995, [Pinnacle] notified [appellees] of the matters set forth in Request for Admissions 19 and 20.
 22. The special-ordered kitchen cabinets were delivered to [Pinnacle] on approximately September 18, 1995.
 23. The specially ordered kitchen cabinets were installed by [Pinnacle] promptly after their delivery on or about September 18, 1995.
 29. [Appellees] received the September 19, 1995 notice on or about September 20, 1995.
 30. [Appellees'] realtor and [appellees'] inspector were present on September 22, 1995, for a walkthrough inspection of the Property.